**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FILED

03 MAR 10  AM 9: 35

CLER U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

**KENT CARASQUERO, LESLIE LOUNSBURY, RIVERSIDE MANITOBA, INC., and TYEE CAPITAL CONSULTANTS, INC.**

**Plaintiffs,**

**v.**

**INTREPID GLOBAL IMAGING 3D, INC., RICHARD SPECHT, RENE HAMOUTH, HAMOUTH FAMILY TRUST, WILLIAM R. DUNAVANT, and WILLIAM R. DUNAVANT FAMILY HOLDINGS, INC.,**

**Defendants.**

CIVIL ACTION
File No.: 3 08 cv-241-J-32JRK

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Kent Carasquero, Leslie Lounsbury, Riverside Manitoba, Inc., and Tyee Capital

Consultants (collectively "Plaintiffs"), by and through their attorney, Gregory Bartko, Esq. of the

Law Office of Gregory Bartko,  hereby file this Complaint For Injunctive And Other Relief

("Complaint") against Intrepid Global Imaging 3D, Inc., Richard Specht, Rene Hamouth, the

Hamouth Family Trust, William R. Dunavant  and William R. Dunavant Family Holdings, Inc,

(collectively referred to throughout as "Defendants"), and allege as follows:

## PARTIES

1.      Defendant, Intrepid Global Imaging 3D, Inc. ("Intrepid") (formerly MangaPets,

Inc. and Newmark Ventures, Inc.) was incorporated on March 4, 1998 in the state of Delaware

and has as its principal place of business, a location at 224 Mill View Way, Ponte Verdra Beach,

Florida 32082-4389. As recently as November 21, 2007 in a Form 8-K filing made by Intrepid

with the United States Securities and Exchange Commission ("SEC"), and in a separate but

1

related lawsuit filed previously in this district on November 26, 2007, Intrepid acknowledged being a citizen of the state of Florida and the state of Delaware [See ¶ 13 of Intrepid's Complaint For Injunctive and Other Relief filed on November 26, 2008 in this Court, File No. 3:07-CV-1106-J-33-HTS ("Intrepid's Complaint")].

     2.     Defendant, Richard Specht ("Specht") is believed to be a resident and citizen of West Vancouver, British Columbia with a residence located at 2980 Waterloo Street V6R 3J5. During all times relevant to this Complaint, Specht was a director and the corporate secretary for Intrepid. Although he is required to do so in accordance with § 16(a) of the Securities Exchange Act t of 1934, Mr. Specht has failed to accurately publicly disclose his beneficial ownership of Intrepid common stock.

     3.     Defendant, Rene Hamouth ("Hamouth") is believed to be a resident and citizen of West Vancouver, British Columbia with a residence located at 2608 Finch Hill. During all times relevant to this Complaint, Hamouth was a director, an officer and/or a principal shareholder of Intrepid and at all times Hamouth was a "promoter or control person" of Intrepid. In particular, Hamouth, was formerly the chief operating officer and member of the board of directors of Intrepid, and at times has been represented to be a consultant to Intrepid. Hamouth is also the beneficial owner of far more than 3,000,000 shares of the common stock of Intrepid by direct ownership and/or through the Defendant, Hamouth Family Trust ("Hamouth Trust"), as disclosed in his public filings made by Hamouth on Form 3 with the SEC as recently as January 23, 2008; which incorrectly discloses Hamouth's ownership to be only 3,000,000 shares. Hamouth is also the trustee of the Hamouth Trust and as such, the Hamouth Trust is also believed to be a citizen and resident of West Vancouver, British Columbia.

4.      Defendant, William R. Dunavant ("Dunavant") is believed to be a resident and citizen of Park City, Utah with a residence at 2624 Eagle Cove Drive. Dunavant is the current chief executive officer of Intrepid and, according to reports filed by him with the SEC, is the beneficial owner of 2,000,000 shares of common stock of Intrepid by direct ownership and/or through William R. Dunavant Holdings, Inc. ("Dunavant Holdings"), as is shown by Dunavant's Form 3 filing made with the SEC as recently as January 23, 2008.  Dunavant is also believed to be the control person over Dunavant Holdings and as such, Dunavant Holdings is also believed to be a citizen and resident of Park City, Utah. Dunavant has actively participated in many of the corporate decisions and actions of Intrepid that give rise to the intentional, deceitful and wrongful acts of the Defendants, collectively, as alleged in this Complaint.

5.      Plaintiff, Kent Carasquero ("Carasquero") is a resident and citizen of Vancouver, British Columbia and is the president of Tyee Capital Consultants, Inc.

6.      Plaintiff, Leslie Lounsbury ("Lounsbury") is a resident and citizen of Winnipeg, Manitoba.  Lounsbury is the mother of Carasquero. Lounsbury is also the president of the Plaintiff, Riverside Manitoba, Inc. ("Riverside"), which is a company that purchased advertising services from Intrepid pursuant to an Advertising Agreement dated as of September 30, 2005 ("Advertising Agreement") by and between Riverside and Intrepid and for which Intrepid refused to provide services for, all in breach of said agreement as more particularly described below.

7.      Plaintiff, Tyee Capital Consultants, Inc. ("Tyee") is a corporation organized and operating in Vancouver, British Columbia. Tyee is a citizen of British Columbia, Canada. Tyee is managed and controlled by Carasquero.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to §27 of the Securities

Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78aa) and 28 U.S.C. §1331. The claims

asserted herein arise under §§ 10(b) 14 and 20(a) of the Exchange Act; and the rules and

regulations promulgated there under by the SEC, including 10b-5 and 17 C.F.R. §240.10b-5.

9.      Venue is proper in this district pursuant to 15 U.S.C. §78(a), because a substantial

part of the actions giving rise to these claims occurred within this district and pursuant to §27 of

the Exchange Act, 28 U.S.C. §1391(b). Many of the events or omissions giving rise to the claims

alleged occurred within this district. Intrepid, having recently filed suit in this Court, alleged that

its principal office is located within this district.

10.      Pursuant to 28 U.S.C. §1367, this Court also has pendant jurisdiction over

Plaintiffs' claims that arise under Florida state law.

11.      This Court has personal jurisdictions over all of the Defendants named as such in

this case based on their pattern of fraud and deceptive conduct and their tortuous actions,

portions or all of which occurred within this district. As alleged above, Intrepid has already

recently asserted that its principal office is located within this district.

12.      In connection with the acts described herein, Defendants have, directly or

indirectly, made use of the means or instrumentalities of interstate commerce in the perpetration

of the wrongful acts hereinafter alleged.

13.      Intrepid's common stock, par value $.001 per share, is registered under §§ 12(b)

or 12(g) under the Exchange Act. As a result, Intrepid files periodic reports with the SEC and

quotes its common stock in the over-the-counter market, specifically on the Electronic Bulletin

Board maintained by the Nasdaq Stock Market, Inc. under the symbol "IGLB.OB."

## FACTUAL ALLEGATIONS

14.      Between December, 2001 and October, 2006, Carasquero was retained by Intrepid for various corporate and advisory matters in a consulting capacity. On or about December 1, 2003, Carasquero received 25,000 shares of common stock from Intrepid (referred to throughout this Complaint as "Shares") as compensation pursuant to a stock benefit plan, evidenced by a public filing made by Intrepid with the SEC on August 26, 2003. Carasquero's Shares were issued to him from Intrepid's employee stock benefit plan registered under Form S-8 filed with the SEC, and as such, were issued to him without restrictive legend and should have been freely tradable and resalable into the public markets.

15.      On or about April 21, 2004, Carasquero became a member of the board of directors, president, and chief financial officer of Intrepid.   Carasquero's engagement was formalized on April 30, 2004, pursuant to an Employment Agreement attached to this Complaint and incorporated by reference as Exhibit "A." As compensation to induce Carasquero to enter the Employment Agreement, 1,000,000 Shares of common stock were to be issued in addition to a monthly salary payable to Carasquero equal to of $2,500 USD.

16.      On or about September 21, 2004, Carasquero resigned as both an officer and director of Intrepid at the demand of Hamouth and returned 1,000,000 Shares of common stock that had been issued to Carasquero pursuant to his Employment Agreement with Intrepid.

17.      On or about October 1, 2004, a subsequent Consulting Agreement, hereby attached and incorporated by reference as Exhibit "B," was entered into by and between Carasquero and Intrepid which provided for a revised compensation schedule to the compensation schedule attached to the April 30, 2004 Employment Agreement. The October 1, 2004 Consulting Agreement included payment of a monthly salary of $5,000 Canadian Dollars

("CAD"), for 12 months, which provided that his fee could be paid with certain "Fee Shares", which were described as common shares of Intrepid to be registered with the SEC under an employee benefit plan on a Form S-8 registration statement to be filed with the SEC. Carasquero accepted the consultancy and at all times, provided services at the request of Intrepid, Hamouth, Specht and other officers and directors not named as yet as Defendants herein.

18.     The October 1, 2004 Consulting Agreement was renewed by Carasquero and Intrepid on October 1, 2005. Attached hereto and incorporated by reference as Exhibit "C," is a copy of the October 1, 2005 Consulting Agreement.

19.     On or about November 9, 2004, Lounsbury loaned Intrepid $10,000 USD pursuant to a one-year Convertible Loan Agreement, a copy of which is attached and incorporated herein as Exhibit "D."

20.     On or about November 25, 2004, Lounsbury loaned Intrepid and additional $6,500 USD pursuant to a one-year Convertible Loan Agreement, a copy of which is attached and incorporated herein as Exhibit "E."

21.     On or about December 16, 2004, Lounsbury loaned Intrepid an additional $20,000 USD pursuant to a one-year Convertible Loan Agreement, a copy of which is attached and incorporated herein as Exhibit "F."

22.     On or about January 30, 2005 Carasquero, received 14,000 Shares of common stock from Intrepid, which shares were registered for issuance on a Form S-8 registration statement filed with the SEC. These 14,000 Shares were received by Carasquero as payment for services relating to the October 1, 2004 Consulting Agreement as "Fee Shares."

23.    On or about March 4, 2005, Lounsbury loaned Intrepid an additional $10,000 USD pursuant to a one-year Convertible Loan Agreement, a copy of which is attached and incorporated herein as Exhibit "G."

24.    On May 31, 2005 Carasquero received an additional 10,000 Shares of common stock from Intrepid, which Shares were registered for issuance on a Form S-8 registration statement filed with the SEC. These 10,000 Shares were received by Carasquero as payment for services related to the October 1, 2004 Consulting Agreement as "Fee Shares".

25.    On September 30, 2005, Lounsbury and Intrepid entered into a Debt Settlement Agreement, a copy of which is attached hereto as Exhibit "H."  In consideration of the $54,826.85 then owed to Lounsbury by Intrepid under the November 9, 2004, November 25, 2004, December 16, 2004, and March 4, 2005 Convertible Loan Agreements, including principal and interest, Intrepid agreed to an immediate payment to Lounsbury of $25,000 USD, the issuance of 30,000 Shares of Intrepid common stock (also hereafter referred to as "Shares"), and the issuance of two common stock purchase warrants, entitling Lounsbury to purchase an additional 60,000 Shares of Intrepid common stock, in total satisfaction of all debt obligations owed to Lounsbury by Intrepid.

26.    As alleged above, on September 30, 2005, Intrepid entered into an Advertising Agreement with Riverside, a copy of which is attached hereto and incorporated herein by reference as Exhibit "I." Pursuant to the Advertising Agreement and the "rate card" attached thereto, Riverside, as the advertiser, agreed to purchase, and Intrepid agreed to provide, advertising services as described in said agreement. In furtherance thereof, Riverside delivered to Intrepid the sum of $25,000 CND as and for a "pre-payment" towards the sums to become due under the Advertising Agreement. This pre-payment amount was determined by the rate card

attached as such to Exhibit "I." Intrepid wrongfully retained and deprived Riverside of its pre-payment and at no time did Intrepid provide any services there under.  On November 15, 2006, Riverside demanded the return of Riverside's prepayment, but same has never been returned.

27.    Intrepid, as controlled by the other individual Defendants named in this action, breached the consulting agreements entered into with Tyee and with Carasquero by failing to pay to each of the said Plaintiffs, all sums due and owing and invoiced to Intrepid by Tyee and Carasquero. Intrepid has on three separate occasions acknowledged its breach of the compensation terms of the consulting contracts by requesting Tyee and Carasquero to confirm to Intrepid's auditors, the actual amounts due to the Plaintiffs for the year ended December 31, 2006. In that regard, Intrepid has admitted and/or acknowledged owing Tyee the sum of $51,779.60 in principal as of said date; Carasquero the sum of $47,843.09 as of said date; and Riverside, the sum of $21,537 USD as of the same date.[1]

28.    In addition to the foregoing sums, Intrepid has refused to return, notwithstanding Riverside's written demand dated November 15, 2006, the sum of $25,000[2] CND paid to Intrepid as a "pre-payment" against Riverside's purchase of advertising services from Intrepid.

29.    On December 20, 2005 Carasquero received an additional 15,000 Shares of common stock from Intrepid, which Shares were registered for issuance on a Form S-8 registration statement filed with the SEC. These 15,000 Shares were received by Carasquero as payment for services under the October 1, 2005 Consulting Agreement as "Fee Shares."

30.    On March 29, 2005, the board of directors of Intrepid authorized the issuance of 140,625 Shares of common stock to Carasquero as compensation for services rendered to

---

[1] These amounts owed to Plaintiffs and claimed as damages herein include fees for services as well as advances made by Plaintiffs for the payment of Intrepid's creditors. The combined sums due to Plaintiffs was acknowledged by Intrepid during its audit process as alleged herein.
[2] The amount of $21,537 USD referenced in ¶ 27 and the amount of $25,000 CND referenced in ¶ 28 are related to the same agreement with Riverside.

Intrepid between April 30, 2004 and September 21, 2004 and as consideration for 1,000,000 Shares of Intrepid common stock previously returned to Intrepid by Carasquero by agreement. The board of directors of Intrepid approved a written board resolution memorializing this action.

31.     Between March 2005 and December 2006, Intrepid and the individual Defendants made several false or reckless accusations against Carasquero that included improper issuance of Intrepid's common stock to himself and other related improprieties. However, Intrepid, through their corporate counsel, Winston and Strawn, L.L.P., made public disclosure on December 8, 2006 that the investigation of Carasquero had been completed and that no improprieties were found. Such public disclosures were included in a filing Form 8-K with the SEC to that effect.

32.     On or about May 2, 2007, Tyee Capital Consultants, Inc. was issued 100,000 Shares as a bonus for providing valuable services to Intrepid.

33.     On December 6, 2006, Specht informed Carasquero, through copies of various resolutions signed by Hamouth, that Intrepid would honor the previous issuances of Shares to the Plaintiffs, including the Shares of common stock issued to Carasquero and Tyee Capital Consultants, Inc. under the Employment and Consulting Agreements and the Shares issued to Lounsbury by conversion under the Debt Settlement Agreement. Intrepid thereafter repudiated the validity of the resolutions and the issuance of these and other shares to numerous other shareholders; many of whom had been named as defendants in the legal action described in ¶ 1 hereof. In addition, Hamouth personally made several statements to Carasquero to the effect that Hamouth and others under his control and influence, including the other named Defendants in this action, intentionally planned to hinder and/or delay any transfer of Plaintiff's Shares and, further, that if Carasquero were to prevail in any lawsuit brought to permit the transfer of the Plaintiff's Shares, Hamouth planned to then unlawfully and wrongfully issue additional shares of

common stock of Intrepid without adequate value or consideration, intending to dilute the beneficial ownership percentages held by Plaintiffs.

34.     Plaintiff's legal counsel, Gregory Bartko, Esq. ("Bartko"), is an Atlanta- based corporate and securities attorney who was retained by Plaintiffs for the purpose of holding the Shares of Intrepid common stock without restrictive legend, and now serves as the custodial trustee of such Shares. In total, approximately 346,363 Shares of Intrepid common stock are held in trust by Bartko for the benefit of the Plaintiffs.

35.     Between the dates of September 18, 2007 and November 5, 2007, Bartko made several formal written demands upon Intrepid and its stock transfer agent, to deliver the Plaintiff's Shares to each of them or to Plaintiff's trustee, Bartko, without restrictive legend.

36.     Intrepid and all of the individually-named Defendants have intentionally, wrongfully and with nefarious purposes, conspired and engaged in a pattern of activity designed to prevent or delay the rightful transfer and/or resale of the Shares to the Plaintiffs in this action, without restrictive legend.  In perpetrating these wrongful actions, Defendants collectively engaged in a series of material misrepresentations, wrongful and fraudulent actions and omitted to disclose material facts and information beginning with the initial issuance of the Shares to Tyee, Carasquero and Lounsbury and then continuing thereafter, that included the following:

(i)     Said Defendants expressly stated to the Plaintiffs that a portion of the dollar amounts that were due and owing by Intrepid to the said Plaintiffs for their services would be paid through the delivery of the Shares of Intrepid's common stock. At the time of delivery of the Shares to the Plaintiffs, Plaintiff's were advised and led to believe by the Defendants that the Shares were "validly issued, fully paid and non-assessable Shares" whereas in reality, Defendants had formulated and began to implement a plan and scheme to impede and restrict the Plaintiffs from ever reselling or transferring their Shares into the over-the-counter market;

(ii)    Beginning as early as October, 2004, Hamouth, Intrepid and others in a position of management of Intrepid, conspired to deceive the Plaintiffs into rendering good

and valuable services, lending large sums of money to Intrepid and forbearing the due and rightful collection of all compensation due to the Plaintiffs under false representations and promises that Plaintiffs would receive Shares of Intrepid common stock that would become salable into the public market in accordance with Rule 144 promulgated under the Securities Act of 1933 ("Rule 144");

(iii)    Plaintiffs accepted the Defendants' misrepresentations and their omissions to disclosure other material facts that had they been disclosed would have made the Defendants' representations not materially misleading to the Plaintiffs. In reliance on the Defendants material misrepresentations, Plaintiffs took delivery of Shares of Intrepid common stock from the Defendants, accepting the Defendants' representations that the Shares would become salable in the over-the-counter markets in reliance on Rule 144. Moreover, Carasquero had received Shares from Intrepid that were duly registered for resale on Form S-8 filed with the SEC, but even so, the wrongful acts and practices perpetrated by the Defendants impeded and restricted Carasquero from reselling his S-8 Shares into the public market;

(iv)    After Plaintiffs received their Shares of common stock from Intrepid, and after all conditions of Rule 144 had been fully satisfied to enable the Plaintiffs to resell their Shares into the public market, the Defendants, Hamouth, Specht, Dunavant, Hamouth Trust and Dunavant Holdings, wrongfully conspired to unlawfully impede and restrict the Plaintiff's ability to resell their Shares of common stock. Defendants' actions included, but were not limited to notifying Intrepid's stock transfer agent to place a stop order on the Plaintiff's Shares, frivolously filing suit against the Plaintiffs in this Court contending that the Shares issued to Plaintiff's were illegally issued without fair and adequate consideration, bogusly instigating an internal investigation of the conduct of Carasquero as a fraudulent means of further impeding his ability to transfer or resell his Shares and threatening to and in fact issuing millions of additional shares of common stock to themselves without fair and adequate consideration as a means of materially diluting Plaintiff's ownership percentage of the outstanding common stock of Intrepid;

(v)    Making false and untruthful allegations in a lawsuit filed by Defendants against Carasquero in British Columbia, Canada, that was subsequently dismissed by Hamouth after making the unfounded allegations against Carasquero public; several formal disclosures in the form of affidavits to this Federal Court claiming that Carasquero's actions while serving as an officer and director of Intrepid were self-serving and that approval of the issuance of Shares to Carasquero during his tenure as an officer and director of Intrepid was unlawful and constituted an *ultra vires* act.

37.    In fact, the Defendants' actions as described in ¶ 37(i) through (v) were deceitful, and perpetrated by the Defendants as a part of a fraudulent scheme to deprive the Plaintiffs of their Shares of Intrepid common stock and/or deprive the Plaintiffs of their right to resell such

Shares in reliance on Rule 144, and in the case of Carasquero's S-8 shares, in reliance on the Form S-8 registration statements filed by Intrepid covering the issuance of said Shares to him at that time.

38.     Defendants' actions, as described herein, were intentional or at a minimum, reckless and were designed to mislead the Plaintiffs into believing they were being adequately compensated for their services and/or the loans granted to Intrepid, when in reality the Defendants' plan was to cheat the Plaintiffs out of the market value of their Shares. In fact the Defendants' actions have had the very intended affect, as the Plaintiff's were unable to transfer or resell their Shares under Rule 144 until the dismissal of the lawsuit described in ¶ 1, above, on December 13, 2007. As a consequence, Plaintiffs were unable to sell their Shares in the public market or in any privately-negotiated transactions.

39.     The Defendants' wrongful actions also included the filing of two frivolous lawsuits against the Plaintiffs in hopes that frivolous legal actions would quell the Plaintiffs from seeking to enforce their rights to resell their Shares. The first frivolous lawsuit was filed in the Supreme Court of British Columbia and subsequently voluntarily dismissed by Intrepid and Hamouth. Thereafter, Intrepid filed suit in this Court on November 26, 2007 *[Intrepid v. Pia Athayde, United States District Court—Middle District of Florida, Jacksonville Division, File No.3:07-CV-1106-J-33HTS]*, regarding claims asserted by Intrepid that Plaintiffs' actions in acquiring their Shares were wrongful. Intrepid's November 26, 2007 complaint was subsequently dismissed by order and opinion issued by United States District Judge Virginia M. Hernandez-Covington on December 13, 2007 [Doc. No. 29].

40.     On December 12, 2007, Intrepid filed a notice with the Delaware Secretary of State to the effect that the board of directors had allegedly approved a 1-for-2 reverse split of all

Intrepid common shares. This corporate action was taken for the purposes alleged above, that is to reduce the value of the Plaintiffs' Shares and ultimately dilute the ownership percentage held by Plaintiffs. This corporate action was disclosed to the SEC and the public by Intrepid's filing of a Form 8-K on December 3, 2007. Plaintiffs assert that Defendants caused and conspired to file a false and misleading Form 8-K disclosing corporate action that was not legally in compliance with § 14 of the Exchange Act, as Intrepid has failed to file either a proxy statement or an information statement with the SEC as a prerequisite to the effectiveness of such corporate action.

41.     On January 23, 2008 Intrepid issued to Hamouth, 3,000,000 shares of Intrepid common stock pursuant to the disclosure of a merger agreement that was allegedly entered into between Intrepid, First Versatile Smartcard Solutions Corporation and MacKay Group Limited. Since Intrepid is responsible to file reports with the SEC pursuant to § 13 or 15(d) of the Exchange Act, a condition precedent to the effectiveness of any such merger agreement involving Intrepid's common stock would be the filing of a proxy statement or in the alternative an information statement with the SEC, pursuant to § 14 of the Exchange Act.  Intrepid also failed to comply with § 14 of the Exchange Act in that it failed to deliver either a proxy statement or information statement to all beneficial shareholders of record prior to the action to approve any such merger that involves the combination of Intrepid with another entity.

42.     On January 23, 2008, Dunavant also received 2,000,000 shares of Intrepid common stock ostensibly pursuant to the merger agreement. As alleged in ¶ 41, above, Intrepid failed to comply with § 14 of the Exchange Act.

43.     Due to Intrepid's failure to comply with the proxy or information statement delivery requirements of § 14 of the Exchange Act, the actions taken by the Defendants in

approving the merger disclosed in Intrepid's Form 8-K filed with the SEC on November 26, 2007 and the 2-for-1 reverse stock split disclosed in Intrepid's Form 8-K filed with the SEC on December 3, 2007, is without any validity or effect.

44.    Based upon the foregoing, any issuance of shares of common stock by Intrepid to Hamouth and/or Dunavant is void and of no effect.

**COUNT I**
**FAILURE OF INTREPID TO REGISTER TRANSFER OF SHARES**

45.    Paragraphs 1 through 44 are hereby incorporated by reference the same as if they were repeated in full.

46.    Plaintiffs presented the Shares of Intrepid, in registered form, with a request and instructions to register the transfer of Shares, which request was duly made to Intrepid's stock transfer agent.

47.    The endorsement or instruction was made by Bartko, the appropriate person and/or an agent of Plaintiffs, who had actual authority to act on their behalf to Intrepid's duly appointed stock transfer agent.

48.    Reasonable assurance was provided to Intrepid and its stock transfer agent that the endorsement or instruction to transfer the Shares without restriction or restrictive legend was genuine, authorized and permissible under either Rule 144 promulgated under the Securities Act of one or more other applicable exemptions from registration under the Securities Act.

49.    The proposed transfer of the Shares by Plaintiffs did not violate any restriction on transfer imposed by Intrepid or by Federal and state securities laws and the Shares should have been fully released from restriction by Intrepid and its stock transfer agent. All other conditions precedent to the lawful transfer or sale of the Shares had been satisfied at the time of Plaintiffs' request for transfer of the Shares.

50.     The Defendants took a number of actions designed to thwart the Plaintiffs' transfer and sale of the Shares and in fact did so wrongfully impede the transfer of their Shares.

51.     As a result of Intrepid's failure to register the transfer of Shares and otherwise permit the rightful transfer and sale of the Shares, Plaintiffs have suffered economic damage. The precise amount of economic damage sustained will be established by Plaintiffs at trial.

## COUNT II

## BREACH OF FIDUCIARY DUTY

52.     Paragraphs 1 through 51 are hereby incorporated by reference the same as if they were repeated in full.

53.     The Defendants owed and continue to owe a fiduciary duty to Plaintiffs as beneficial holders of Intrepid's common stock.

54.     In particular, Defendant Hamouth and the Hamouth Trust, as former chief operating officer and a member of the board of directors of Intrepid, owed a fiduciary duty to Plaintiffs as beneficial holders of Intrepid's common stock.

55.     Defendant Dunavant and Dunavant Holdings, as chief executive officer of Intrepid, owed and continue to owe a fiduciary duty to Plaintiffs as beneficial holders of Intrepid common stock.

56.     Defendants Intrepid, Hamouth, and Dunavant breached their fiduciary duties to Plaintiffs by wrongfully preventing the registration and transfer of the Shares held by Plaintiffs; by causing the Shares to issue to the Plaintiffs under circumstances whereby the Defendants wrongfully created the impression to the Plaintiffs that the Shares would be resalable and transferable either in accordance with Rule 144 or pursuant to registration of the Shares on Form

S-8 filed with the SEC. In other words, Defendants "duped" Plaintiffs into providing services and capital to Intrepid only to then wrongfully tie up and restrict the Shares from sale or transfer.

57.      The Defendants further breached their fiduciary duty to Plaintiffs by initiating two frivolous lawsuit against Plaintiffs for the purpose of delaying the registration and transfer of Shares.

58.      Upon information and belief, after their failure to allow and permit  the transfer of the Shares for the benefit of the Plaintiffs as requested and instructed by Bartko, Intrepid, as controlled by Hamouth and Dunavant, further breached their fiduciary duty to the Plaintiffs as minority shareholders by engaging in a series of interested transactions leading to the issuance of several million shares of common stock without fair consideration and without complying with Federal and state securities laws, thus violating their duties as directors and officers of Intrepid and materially diluting the ownership percentage of common stock held by the Plaintiffs.

59.      As a result of Defendants' breaches of fiduciary duties, Plaintiffs have suffered economic damages in the amounts to which Plaintiffs will establish at trial.

## COUNT III
## CONVERSION

60.      Paragraphs 1 through 59 are hereby incorporated by reference the same as if they were repeated in full.

61.      Carasquero is currently the rightful owner of 12,500 Shares.

62.      Lounsbury is currently the rightful owner of 60,000 Shares.

63.      Tyee is currently rightful owner of 120,313 Shares.

64.      Between September 18, 2007 and November 5, 2007, Bartko prepared three requests for the issuance of Shares without restrictive legend, pursuant to SEC Rule 144, on

behalf of the above-named Plaintiffs and several other Intrepid shareholders. Bartko's request was duly submitted to Intrepid's stock transfer agent.

65.     Intrepid, as controlled by the individual Defendants, upon learning of Plaintiffs' efforts to have Plaintiffs' Shares transferred, knowingly, wrongfully and deceitfully refused to honor the transfer and instructed Intrepid's stock transfer agent to refuse to register the transfer of the Shares. Such action by Intrepid's stock transfer agent is and at all times relevant to this Complaint, was binding upon Intrepid as a disclosed principal.

66.     Intrepid's conduct deprived Plaintiffs of their property rights by restricting their ability to resell their Shares.

67.     Intrepid, as controlled by the individual Defendants, appropriated the market value of the Plaintiffs' Shares by retaining the consideration exchanged and thereafter preventing registration and transfer of the Shares.

68.     Thereafter, Defendants, as controlled by the individual Defendants, engaged in a pattern of self-dealing by issuing several million shares of common stock, without fair consideration, and thereby diluting the value of Plaintiffs' Shares.

## COUNT IV
## BREACH OF THE IMPLIED CONVENANT
## OF GOOD FAITH AND FAIR DEALING

69.     Paragraphs 1 through 68 are hereby incorporated by reference the same as if they were repeated in full.

70.     An implied covenant of good faith and fair dealing is implied in every contract.

71.     Intrepid entered into several agreements with Plaintiffs as alleged herein which included, as consideration underlying the agreements, the issuance of Shares.

72.    Intrepid breached the covenant of good faith and fair dealing at the time it entered into the various agreements by subsequently refusing to register the transfer of Plaintiffs' Shares, initiating frivolous litigation twice against Plaintiffs to burden, delay, and hinder the rightful sale and transfer of the Shares and thereafter attempting to convert the value of the Shares held by Plaintiffs by materially diluting the common stock.

## COUNT V
## BREACH OF CONTRACT

73.    Paragraphs 1 through 72 are hereby incorporated by reference the same as if they were repeated in full.

74.    Intrepid entered into several agreements with Plaintiffs, as alleged in ¶¶ 14-26 hereof, which included, as consideration underlying the agreements, the issuance of Shares.

75.    Intrepid breached the underlying agreements among the parties by refusing to register the transfer of Shares, initiating frivolous litigation against Plaintiffs to burden, delay, and hinder the rightful sale and transfer of the Shares, and thereafter attempting to convert the value of the Shares by diluting the Plaintiffs' ownership percentage of their common stock.

76.    Plaintiff's suffered damages as a result of Intrepid's breach of the said agreements as will be shown at the trial of this case.

## COUNT VI
## VIOLATION OF §10(b) OF THE EXCHANGE ACT AND RULE 10b-5
## (15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5)

77.    Paragraphs 1 through 76 are hereby incorporated by reference the same as if they were repeated in full.

78.    § 10(b) of the Exchange Act and Rule 10b-5 promulgated there under prohibit (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements not misleading; and/or

engaged in acts, practices, and a course of business which operated, or was intended to operate, as a fraud and deceit upon Plaintiffs.

79.     Defendants collectively employed devices and schemes and engaged in practices which were intended to operate as fraud or deceit upon Plaintiffs.

80.     Defendants Hamouth and Dunavant, through their control of Intrepid, engaged in acts in violation of §10(b) and Rule 10(b)-5 of the Exchange Act.

81.     Plaintiffs suffered damages as a proximate result of the Defendants' fraud and their employment of devices, schemes and artifices to defraud the Plaintiffs in connection with the sale and issuance of the Shares to the Plaintiffs as alleged herein.

## COUNT VII
## VIOLATION OF §20 OF THE EXCHANGE ACT
## (15 U.S.C. §78t)

82.     Paragraphs 1 through 81 are hereby incorporated by reference the same as if they were repeated in full.

83.     The individual Defendants are persons(s) that were directly or indirectly controlling, controlled by, or under common control with Intrepid.  By virtue of their high level positions with Intrepid, participation in and/or awareness of the company's operations, Hamouth, Dunavant and Specht had the requisite power to control or influence Intrepid and as such, said individual Defendants were, and acted as, controlling persons of Intrepid within the meaning of §20(a) of the Exchange Act.

84.     Said Individual Defendants, Hamouth, Dunavant and Specht unlawfully, directly or indirectly, aided and abetted Intrepid by knowingly providing substantial assistance in the commission of the wrongful acts and practices alleged in this Complaint, thus resulting in further violations of the Exchange Act as controlling persons of Intrepid.

85.     As set forth herein, Hamouth,  Dunavant and Specht violated §10(b) and Rule 10b-5 of the Exchange Act by their acts and omissions to act and as such, are the direct and proximate result of Intrepid's wrongful conduct.

86.     Plaintiffs suffered damages in connection with the aforesaid violations of §20(a) of the Exchange Act and therefore the individual Defendants as controlling persons of intrepid are liable therefore.

## COUNT VIII
## VIOLATION OF § 14 OF THE EXCHANGE ACT

87.     Paragraphs 1 through 86 are hereby incorporated by reference the same as if they were repeated in full.

88.     Pursuant to §14 of the Exchange Act, Intrepid at all times pertinent hereto, had the duty to file with the SEC and deliver to all holders of record of Intrepid's common stock, such information that is substantially equivalent to the information which would be required to be delivered if a solicitation for a proxy or consent or authorization was made seeking approval of certain corporate action by the shareholders of Intrepid.

89.     Intrepid failed to solicit any proxy, consents or authorizations from Intrepid's shareholders and also failed to provide information as required by §14 of the Exchange Act to its shareholders of record, which is a condition precedent that Intrepid must satisfy prior to the effectiveness of any stock split of the Shares as announced by Intrepid on November 27, 2007 and prior to the effectiveness of any combination or merger of Intrepid's common stock as announced on December 3, 2007.

90.     As a consequence of Intrepid's failure to comply with the information delivery requirements of §14 of the Exchange Act, the corporate actions announced by intrepid on

November 27, 2007 and December 3, 2007, respectively, are of no effect and should be declared by this Court to be void as *ultra vires.*

**COUNT IX**
**INJUNCTIVE RELIEF**

91.     Paragraphs 1 through 90 are hereby incorporated by reference the same as if they were repeated in full.

92.     Due to the fluctuations in market value of Plaintiffs Shares and the past interference by the Defendants in the Plaintiffs' efforts to sell and transfer their Shares as alleged herein, unless restrained from such action, Plaintiffs have legitimate concerns that Defendants will continue their practice and pattern of interfering with their sale or transfer of their Shares and Plaintiffs believes it is extremely likely that Plaintiffs will be irreparably harmed by Defendants' actions in doing so, including the Defendants' threats of causing additional common stock to issue without fair and adequate value in exchange therefore for the sole purpose of wrongfully diluting the beneficial ownership of Plaintiffs' Shares.

**PRAYERS FOR RELIEF**

a)     Awarding compensatory damages against all Defendants in an amount to be determined at trial, together with prejudgment interest as permitted by law;

b)     Preliminary and permanently enjoining Defendants from transferring any of the 5,000,000 shares of common stock issued to Hamouth and Dunavant ostensibly pursuant to the merger or combination of Intrepid's common stock with First Versatile Smartcard Solutions Corporation or the MacKay Group Limited and from issuing any further shares of Intrepid common stock without fair and adequate consideration therefore;

c)     Awarding the Plaintiffs the costs of this suit; and

d)     Granting such other relief as the Court deems just and proper.

Dated this 6th day of March, 2008.

Respectfully Submitted,

Gregory Bartko, Esq.
Georgia Bar Number 040476
3475 Lenox Road
Suite 400
Atlanta, Georgia 30326
404-238-0550 (phone)
404-238-0551 (fax)
gbartko@securitieslawcounsel.com
Counsel for Plaintiffs